cumulation invalid: Biddle's App., 99 Pa. 525; Curran v. Philadelphia Trust Co., 15 Phila. 84; Lennig's Est., 154 Pa. 209.

*N. Dubois Miller* and *Harman Yerkes*, with them *John Faber Miller*, *Carroll R. Williams* and *Nicholas H. Larzelere*, for appellees.—If the power of appointment given to Miss Dobbins does cover the surplus income and is to be construed as a direction to accumulate and merge the surplus income with the principal in the distribution to be made under the will of Miss Dobbins, then such direction is void under the act of 1853: McKee's App., 96 Pa. 277; Eberly's App., 110 Pa. 95; DeRenne's Est., 12 W. N. C. 94; Chamberlayne v. Brockett, L. R. 8 Chancery App. Cases, 206; McBride's Est., 152 Pa. 192; Grim's App., 109 Pa. 391; Howell's Est., 180 Pa. 515; Martin's Est., 185 Pa. 51; Edwards's Est., 190 Pa. 177.

The will and codicils properly interpreted do not disclose an intention that charitable institutions are to take the entire residuary estate, including the income as well as the principal. The accumulations of income being void under the act of 1853, Item 28 affords no assistance in disclosing what shall be done with them: Arthur v. Cumming, 91 U. S. 362.

Item 28 is not operative at all.

PER CURIAM, May 11, 1908:

The decree is reversed and the exceptions of the appellants directed to be sustained in accordance with the opinion of Judge PENROSE.

---

## McClellan's Estate.

*Will—Power of appointment—Valid exercise of power—Intestacy.*

Testatrix gave all of her estate to her husband for the term of his life with power to dispose of the same during his life and with power at his death to appoint and vest any or all that remained undisposed of to such person as he might see fit, provided that nothing should be disposed of or given during his life or by his will to any member of his family.

In case the husband died intestate the estate was given to decedent's brother. The husband died leaving a will by which he appointed the estate coming to him from his wife to a person designated for life, and after the death of such person to the latter's daughter for life with power to appoint the principal by will. *Held,* that the husband of the testator validly exercised the power given to him, and that there was no intestacy of that part of the estate derived from his wife.

In such a case although the will of the husband gave the donee of the power a life estate with power to appoint to another for life, and with authority in the last donee to will the principal as she should choose, and therefore with power to create a life estate in one who is not in being at the death of the testatrix, yet the law will not assume that the daughter would exercise her power of appointment in any other way than that which would be valid.

The law will remedy, if it can, the defective execution of a power, and will not strike down a trust which is in part good, and in part invalid.

*Estates—" Vests"—Definition.*

To vest is to give a legal or equitable seisin. An estate vests in a person who is given a present and immediate interest, as distinguished from an interest whose existence depends upon a contingency.

*Will—Power of appointment—Limitation upon power.*

A proviso limiting a power of appointment is by operation of law written into any will, or power of appointment which the donee of the power may execute, and carries with it the penalty imposed by the will of the donor.

Argued March 26, 1908. Appeals, Nos. 38 and 49, Jan. T., 1908, by Helen Bloodgood and Robert N. Hawley, from decree of O. C. Phila. Co., July T., 1905, No. 301, dismissing exceptions to adjudication in Estate of Clara D. H. McClellan, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

The auditing judge, DALLETT, J., found the facts to be as follows:

The testatrix died June 22, 1904, leaving a will, by which she gave her entire estate to her husband, John M. McClellan, for life, with power to dispose of it during his life and with power to appoint and vest any or all remaining to such persons as he might see fit, provided that nothing should be disposed of or given during his life or by his will to any member of his family.

John M. McClellan died July 1, 1906, leaving a will, whereby he appointed the estate coming to him from his wife to J. Rundell Smith, in trust, to use the income during his life, excepting the payment of a sum annually for the care of his lot in Laurel Hill cemetery, and the payment of $1,500 to Dr. R. N. Hawley. And after the death of J. Rundell Smith appointed the said estate to his daughter, Ellen Hollingshead Smith, in trust, with power to appoint the principal, only provided that she should see to the proper care of Mrs. McClellan's grave.

Mr. Turner, on behalf of Robert N. Hawley, to whom the testatrix gave her estate for life in the event that her husband should not dispose of it as she had provided, or in the event of his dying intestate, asked that the balance now before the court should be awarded to him for life.

Mr. Baxter, on behalf of Mrs. Frances Bloodgood, Jr., a sister of the testatrix, asked the award of one-half of the estate to her on the ground that the testatrix had died intestate, because the execution of the power of appointment by her husband was invalid, and as he had not technically died intestate the provisions of her will in case he should die intestate could not take effect.

The auditing judge awarded the sum of $1,500 to R. N. Hawley and the balance to the trustee under the will of John M. McClellan.

Exceptions by Helen Bloodgood and R. N. Hawley were dismissed by the court, ASHMAN, P. J., filing the following opinion:

The main inquiry concerns the validity of the testamentary trust created by the husband and that created by his appointee. By the will of the testatrix she devised and bequeathed her estate to her husband in these terms: " To my husband John Morton McClellan for the term of his life, with power to dispose of the same during his life, and with power of his last will and testament at his death to appoint and vest any or all that remains undisposed of of my estate, to and in such persons as he sees fit . . . . provided that nothing shall be given during his life or bequeathed by his last will to any member or members of his family." In case of a breach of this pro-

viso she directed that her estate should go to her brother, Dr. R. N. Hawley, for life, with a similar power of disposition during life or by will. The only limitation which is here suggested or can be implied is found, if found at all, in the use of the word "vest." An estate vests in a person who is given a present and immediate interest, as distinguished from an interest whose existence depends upon a contingency. As defined by Chancellor Kent, to vest is to give a legal or equitable seisin : 4 Kent's Com. (13th ed.), 202. An estate in remainder is vested in the remainder-man, although its enjoyment is deferred until the falling in of the life estate. So an estate is vested in a trustee to serve the interests of the cestuis que trust. Whatever may have been the original meaning of the word as denoting the investiture of the fee, the word is now applied to estates in personalty usual as estates in land. In this instance, the husband of the testatrix could have willed the estate in parcels by appointing it to A. for life with remainder to B. in fee, and no one could doubt that he would thereby have vested an estate in each of those parties; and with the same effect he could have vested an estate in a trustee to serve their interests.

Assuming, as we think it did, that the power of appointment in John M. McClellan covered equitable as well as legal estates, was his appointment to J. Rundle Smith in trust, within the limits of the authority conferred by the will of the testatrix, the original donor ? It omitted the proviso in that will, prohibiting any gift to a member of the husband's family. But that proviso was by operation of law written into any will or power of appointment which the husband or his appointee might execute, and would carry with it the penalty imposed by the will of the testatrix. Without doubt the trust created by the husband tended to a perpetuity. His will gave the donee of the power a life estate with power to appoint to another for life, and with authority in the last donee to will the principal as she should choose, and therefore with power to create a life estate in one who was not in being at the death of the testatrix. The law, however, will remedy, if it can, the defective execution of a power, and will not strike down a trust which is in part good and in part invalid, so long as the part which is valid can be upheld : Hor-

witz v. Norris, 49 Pa. 213. Here the trust for the daughter of J. Rundle Smith for life is valid, and we cannot assume that her exercise of the power will be other than valid.

The testatrix owned a small undivided interest in a large tract of land. After her death John M. McClellan joined with the remaining owners in an agreement to sell, under which the land was sold, but he died before the payment of the purchase money. He evidently executed the contract in his own name and not as executor or trustee, because after his death, some doubt having arisen as to his power, the court authorized the executor of his will to execute the deed. If the husband by his joinder intended more than simply to facilitate the sale in which others, and not he, were largely interested, and if his purpose was rather to assert his individual ownership, can he be said by this act to have disposed of "the share" within the meaning of testatrix's will? Especially can this be said when the purchase money never came into his hands, and when the testatrix had used the words "disposed of," in connection with the words "given or spent," meaning thereby some act by which the husband should unmistakably distinguish between his wife's estate and his own. So with the personal effects, consisting of books, paintings, etc. The husband continued after his wife's death to reside in the house which she had occupied, and he apparently allowed these articles to remain undistributed where she had left them. They passed as part of his wife's estate under the clause in his will by which he gave "all my personal property and effects coming to me from my deceased wife," to a trustee.

The discussion by counsel covered a wide range, into which it would be more interesting than useful to enter. The exceptions are dismissed and the adjudication is confirmed.

*Error assigned* was in dismissing exceptions to adjudication.

*Alex. Simpson, Jr.*, with him *Wm. Y. C. Anderson* and *Wm. Jay Turner*, for appellant, R. N. Hawley.—The power under Mrs. McClellan's will was a special one: Thompson v. Garwood, 3 Wharton, 287; Lawrence's Est., 136 Pa. 354.

Special power must be strictly pursued or else the appoint-

ment thereunder will be void: Porter v. Turner, 3 S. & R. 108; Salter v. Howell, 15 S. & R. 188; Wickersham v. Savage, 58 Pa. 365; Rogers's Est., 218 Pa. 431; Ingersoll's Est., 167 Pa. 536.

The appointment fails to pursue the power given in four respects: (a) In creating trusts; (b) in giving only life estates; (c) in charging the life estates given with the payment of certain sums of money; and (d) in attempting to give to someone else the appointment of the remainder: Smith's Estate, 4 W. N. C. 265; Blackford's Est., 4 W. N. C. 17; Myers v. Safe Deposit, etc., Co., 73 Md. 413 (21 Atl. Repr. 58); In re Porter's Settlement, L. R. 45 Ch. Div. 179; Pepper's Est., 120 Pa. 235.

*L. W. Baxter*, for appellant, Helen Bloodgood.

*John G. Johnson*, with him *John Marshall Gest*, for appellee.—The power given to John M. McClellan by his wife's will was, for the purposes of this case, a general power: Mifflin's App., 121 Pa. 205; Lawrence's Est., 136 Pa. 354.

PER CURIAM, May 11, 1908:
The decree is affirmed on the opinion of the court below.

------

## Holbert *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Sidewalk—Accumulations of ice and snow
—Contributory negligence—Evidence—Case for jury.*

A municipality is not liable for injuries resulting from the general slipperiness of its streets or its sidewalks occasioned by a recent precipitation and freezing of rain or snow. Persons who undertake to pass over the sidewalks of a street made unsafe or dangerous by the freezing of recent falls of rain or snow know their condition and assume the risk, and if they fall by reason of the smoothness of the ice, the law imposes no liability upon the city.

While a municipality is not responsible for the general slippery condition of its sidewalks caused by the recent falling or freezing of rain or snow, yet the rule does not extend so far as to protect the city from lia-