## Roberts's Estate.

*Wills—Effect of codicil on alternative general power of appointment—, Exercise by donee of a general power includes accrued share of another donee dying with lapsed special power, although such other donee dies subsequent to the first.*

1. Where a testator gives his son a primary power to appoint among the son's children and an alternative power to appoint generally in default of children, a codicil giving such son a power to appoint one-third of the income to his wife affects only the primary power exercisable in case the son leaves children and does not limit the general power in the absence of children; hence the son, dying without children, may appoint the entire income to his wife.

2. A will created a trust, giving life estates to the sons and daughters of the testator, with a power to each to appoint by will the principal of their respective shares among their own children; in default of children the sons were given a general power of appointment, but the daughters were not, the will providing that in such case the trustees should hold the principal of the daughters' shares "for the rest of my children during their lives in equal shares as herein provided in reference to the shares of my residuary estate herein devised in trust for them." A son died without children and exercised his general power of appointment in favor of his wife. Subsequently a daughter died without children: *Held*, that the power of appointment in the son included not only his original share but such accrued share as arose upon the death of the daughter without children, and that such power was exercisable by the son at any time, although the appointment as to the accrued share could not take effect until the daughter's death without children.

Adjudication. O. C. Phila. Co., July T., 1903, No. 290.

*Thomas Stokes*, for the accountant and for Philadelphia Trust Co., Trustee for Edward Roberts, 3rd, and Agnes P. R. Groome, under the will of Edward Roberts, Jr.; *Boyd Lee Spahr* (of *Ballard, Spahr, Andrews & Madeira*), for Philadelphia Trust Co., Trustee under the will of J. R. Evans Roberts, dec'd.

GEST, J., Aug. 7, 1922.—Edward Roberts, Jr., died on Aug. 12, 1902, leaving a will, by the sixth paragraph of which he devised and bequeathed his residuary estate, real and personal, to the Philadelphia Trust Company in trust, as to one-third part thereof, to invest and keep the same invested and to pay over the net income to his wife, Martha P. Roberts, for the term of her life, and upon her death to hold the said third part of his residury estate in trust for his children or the issue thereof in such proportions and for such uses and estates, etc., as his wife, Martha P. Roberts, should by any last will or testament or writing in the nature thereof direct, limit and appoint, and in default of such direction, limitation, etc., to hold the same upon the same trusts as are set forth in regard to the remaining two-thirds of his residuary estate. Respecting the said two-thirds parts and the one-third part thereof devised in trust for his wife upon her death without having exercised her power of appointment, he directed his trustee to hold the same in trust, to divide the same into five equal parts or shares, as to which he declared trusts in favor of his five children, Edward Roberts, 3rd, J. R. Evans Roberts, Clarence H. Roberts, Agnes P. Roberts and Edith Roberts. As to the share devised in trust for J. R. Evans Roberts, he provided that the same should be held in trust to apply the income to the support and maintenance of his son, J. R. Evans Roberts,

for the term of his natural life, or, at their option, to pay the same into the proper hands of the said J. R. Evans Roberts in quarterly portions, so that the same should be applied solely for his support and maintenance and not in any way or manner liable for any debts, contracts or engagements of the said J. R. Evans Roberts, etc.; and upon the decease of said son, the testator provided, as respects the *corpus* of the share so devised in trust for him for life, "to hold the same in trust for the children of my said son or the issue of such children, in such proportions and for such uses and estates and upon such limitations as he my said son J. R. Evans Roberts shall by any last Will or Testament or writing in the nature thereof direct, limit and appoint; and in default of such direction, limitation or appointment, then to hold the same In trust for all and every the child and children which my said son may leave him surviving and the issue of any who may then be dead leaving such issue, their several and respective Heirs, Executors, Administrators, the issue of any deceased child or children to take however and only receive such part and share thereof as his, her or their deceased parent or parents would have had and taken had he, she or they been then living. And in case my said son shall die without leaving any child or children or issue of such living at the time of his death, then To hold the same In trust for such person or persons and for such estate and estates as he my said son by any last Will and Testament or writing in the nature thereof shall direct, limit and appoint: Provided that if my said son shall die without leaving any child or children or issue of such living at the time of his decease and without having made any direction or appointment under the power above given to him, then I will and direct that my said Trustees shall hold the said *corpus* of the share so devised in trust for him for life In trust for the rest of my children during their lives in equal shares as herein provided in reference to the shares of my residuary estate herein devised in trust for them."

The trusts for the other sons are similar in their provisions, as are those for the two daughters, except that the power of testamentary appointment given to them is restricted to their children and issue.

And by the first codicil to his will, bearing date Jan. 12, 1884, the testator provided as follows: "I will and direct that each of my sons Edward Roberts, J. R. Evans Roberts and Clarence H. Roberts shall have full power and authority by any last Will and Testament or writing in the nature thereof to limit and appoint a portion (not exceeding one-third) of the income of the trust estate held in trust for him under the provisions of the said foregoing last Will and Testament to his wife whom he may leave him surviving for and during the term of her natural life. And I ratify and confirm my said will in all other respects."

Clarence H. Roberts, one of the sons of the testator, died intestate, unmarried and without issue, on June 8, 1889, before his father, the testator, so that his share, under the terms of the will, became part of the other shares given in trust for the other four children, and the estate so became divisible in fourths instead of fifths, as appears from the adjudication of Ferguson, J., upon the account of the executors Oct. 23, 1903. Martha P. Roberts, the widow of testator, died on July 30, 1911, intestate, and, consequently, her power of appointment over one-third of the residuary estate was not exercised.

This account is filed by reason of the death of J. R. Evans Roberts on April 25, 1922, leaving a widow, Ethel Tiers Roberts, but no issue; and the death of Edith R. Disston on May 20, 1922, leaving a husband, Henry Disston, but no issue. The will of J. R. Evans Roberts, dated Oct. 16, 1911, in the fourth clause, provided as follows:

2 D. & C.

### Roberts's Estate.

"Inasmuch as my father, Edward Roberts, Junior, did, in and by his last Will and Testament create a trust, the income of a portion of which he directed should be applied to my support during my life, and as he further provided that at my death I might, by my last Will and Testament or writing in the nature thereof, direct, limit and appoint the manner in which my share of his estate should be distributed, I hereby, availing myself of that privilege, direct, limit and appoint that from the time of my death until the death of my said wife, Ethel Tiers Roberts, if she survive me, said trust shall continue in the hands of the Trustee named by my father and the income that would have been paid to me had I lived be distributed as follows:

"If I am survived by my said wife and no issue of mine, I direct that she receive all of the said income during the full term of her life.

"If I am survived by my said wife and a child or children of mine or issue of such deceased child or children, I direct that one-third of said income be paid to my said wife and two-thirds to such child or children or issue of such deceased child or children *per stirpes* and not *per capita*. In the event of the subsequent death of all of my descendants prior to the death of my said wife, she to receive the entire income until her death.

"Upon the death of my said wife, if a minor child or children of mine survive, I direct that the trust be continued until the youngest of my children reaches the age of twenty-one years, the whole income of my share being in the interim distributed among my descendants *per stirpes* and not *per capita*.

"Upon the termination of the trust, as above extended, if issue of mine survive, I direct that the *corpus* of my share of my father's estate be distributed among such issue then surviving, share and share alike, *per stirpes* and not *per capita*.

"Upon the death of my said wife, if no child or children of mine or issue of such deceased child or children survive, I direct that the *corpus* of my share of my father's estate be immediately distributed as follows:

"One-third thereof as my said wife may by her last will or any paper in the nature thereof direct, limit and appoint; two-thirds thereof among the heirs of my father in accordance with the terms of the trust created by him, as if I had died at that time without making any direction in relation thereto. Should my said wife fail to make any direction of the character above mentioned by her last will or paper in the nature thereof, I direct that the one-third that she might have disposed of merge with the other two-thirds and go as I have above directed."

It does not appear whether Edith R. Disston left a will or not; but that is unimportant, as, under the terms of the will of Edward Roberts, Jr., the testator, her power of appointment was restricted to her children and issue, and, as she died without issue, the share of principal from which she received the income is, by the terms of the will of Edward Roberts, Jr., to be held "in trust for the rest of my children during their lives in equal shares, as herein provided in reference to the shares of my residuary estate herein devised in trust for them."

Edward Roberts and Agnes P. R. Groome are living, and the trust for them continues. Edward Roberts is married, but has no children or issue. Agnes P. R. Groome has three children, whose names are stated in the petition for distribution, and all of them have minor issue.

Before proceeding to the determination of the questions of law which were argued, it should be observed that the entire residuary estate remains, according to the account, undivided in the hands of the trustee. This was, perhaps, well enough during the lifetime of the widow, whose death occurred July 30, 1911, and who was, therefore, living when the account of the executors and

the first account of the trustee were filed in 1903 and 1911; but the will of the testator clearly directs that the estate should be divided among the trusts for his several children, and the awards now to be made will be in accordance therewith.

The questions for decision are two: The first relates to the extent of the power exercised by J. R. Evans Roberts in favor of his wife, and the other to the *quantum* of the estate that is subject to it. These will be considered in their order.

1. The will of Edward Roberts, the testator, gave to his son, J. R. Evans Roberts, in the event of the latter's death without leaving issue then living, a general power of testamentary appointment over the share of the estate held in trust for him. By his codicil the testator gave to each of his three sons authority to limit and appoint by his will a portion, not exceeding one-third, of the income of the trust estate held in trust for him to his wife whom he might leave surviving him for the term of her life. By the will of J. R. Evans Roberts, dated Oct. 16, 1911, the testator, donee of the power, directed that the trust estate should remain in the hands of the trustee until the death of his wife, Ethel, and that in case he left no issue, she should receive all of the income during her life. It was argued on behalf of the trustee representing the interests of Edward Roberts, 3rd, and Agnes P. R. Groome that the codicil restricted the power of J. R. Evans Roberts to appoint in favor of his wife to one-third of the income for her life; in other words, cut down the general power he possessed in case he died without issue surviving him, as in fact he did. In behalf of Ethel T. Roberts, it is contended that the purpose of the testator was not to restrict the general power of appointment given to J. R. Evans Roberts in case he died without issue, but to enlarge his power in case he left issue, in which event the power conferred by the will was a special power to appoint among his issue only, with a limitation in favor of all of his children and issue in case he did not appoint among them.

Notwithstanding the able argument of Mr. Stokes on this point, I have little doubt that J. R. Evans Roberts had the right to appoint the entire income in favor of his wife. What Edward Roberts, the testator, intended by his codicil was to give to each of his sons a power to appoint one-third of the income of his trust estate to his wife in case he left issue, for, in that event, he was given no such power by the will. As J. R. Evans Roberts left no issue, the will gave him the right to appoint not only the income, but also the *corpus* of the estate to any one, even an entire stranger, and, of course, he might have appointed in favor of his wife. It would be a strange anomaly if the codicil (which applies not only to J. R. Evans Roberts, but all the sons) should be interpreted to restrict the general power already given, just as if the testator had said: "If you leave no issue, you may give the estate to whomsoever you please, but you may give your wife not more than one-third of the income for her life." The testator had in contemplation that his sons, including J. R. Evans Roberts, might, and probably would, leave children, and he did not desire, in that event, that he should take from the children for the benefit of his wife more than one-third of the income for her life. I observe, in conclusion, that no question of the rule against perpetuities can arise in this case, as Ethel was born, it was stated, in 1872; and no question can arise at the present time in reference to the power of testamentary appointment given to her by the will of J. R. Evans Roberts: McClellan's Estate, 221 Pa. 261.

2. J. R. Evans Roberts died, as stated, on April 25, 1922, and, after his death, his sister, Edith R. Disston, died May 20, 1922, leaving a husband, but no issue. By the will of Edward Roberts, her father, she was given only a

2 D. & C.

special power to appoint her trust estate among her children, and in default of appointment, then the trust estate was devised to her children and issue, etc.; and if she left no children or issue, the will directed the trustee to hold the *corpus* of the share so devised in trust for her for life and in trust "for the rest of my children during their lives, in equal shares, as herein provided in reference to the shares of my residuary estate herein devised in trust for them." As Mrs. Disston had no children, this final limitation takes effect, so that this share, one-fourth, as I shall proceed to show, should continue to be held by the trustee for the other three children, one-third in trust for Edward, one-third in trust for Agnes and one-third in trust for Evans Roberts, or those persons entitled to his share. It was claimed on behalf of the trustee under the will of Evans Roberts that this share, one-third of Mrs. Disston's trust estate, passed under his will, in which he exercised his power of appointment, although the contingency of Mrs. Disston's death, when this limitation to the trust for Evans took effect, occurred after the death of Evans Roberts. It was argued in behalf of the trustee for Agnes Groome and Edward Roberts, 3rd, that this limitation "in trust for the rest of my children during their lives," etc., intended those children who survived Edith Disston, and there were cited Woelpper's Appeal, 126 Pa. 562; Steinmetz's Estate, 194 Pa. 611, and Craig's Estate, 24 Dist. R. 851. I do not think that this was the meaning of the testator.

While there does not appear to be any case in Pennsylvania or elsewhere in which the words "the rest of my children" or the like phrase has been construed, I have no doubt that this testator used it in the sense of "other." In Smith *v.* Myers, 212 Pa. 51, "remaining children" were interpreted as "other children" and not "then surviving children;" and "remaining" might be considered as equivalent to "then surviving" more readily than the word "other." Even if the word "other" were used and should be held to mean "surviving," the survivorship would be referred to the death of the testator: Fagen's Estate, 30 Dist. R. 28; Bentley's Estate, No. 2, 30 Dist. R. 69, and cases therein cited. It is true that the will directs that Edith's share, on her death without issue, shall be held in trust for "the rest of my children during their lives, etc.," but the reference to the life estates of the other children simply indicates the trusts and does not imply that the other children must be then living. The trusts are identified to be those, the full terms of which appear by the succeeding clause relating to the previous devises of the residuary estate. If we suppose that Evans Roberts had left issue at his death, and afterwards Edith Disston had died, as she did, without issue, then, on the contrary theory of interpretation, her share would pass in trust for Edward and Agnes, thus depriving the children of Evans of any share. And so, also, there can be no doubt that the estate held in trust for Edith and liberated by her death passed in augmentation of the trust estates of the three "other" children. There is no room here for the application of the doctrine that accrued shares, *prima facie*, pass free of the trusts imposed on original shares, as in Lang's Estate, 16 Phila. 308, and Livezey's Estate, 22 Dist. R. 984; 245 Pa. 230. This rule has no application where, as in this case, the gift distinctly refers to the prior trust provisions of the will. See Small *v.* Small, 242 Pa. 235; Stille's Estate, 25 Dist. R. 807; 69 Pa. Superior Ct. 56; Mullen's Estate, 270 Pa. 321.

Up to this point there appears to be little difficulty. One-third of the estate held in trust for Edith passed to the trustee for Evans Roberts, and, as he had died, the remainder interests were accelerated: Bruner's Estate, 14 Dist. R. 124; Crawford's Estate, 18 Dist. R. 594; but the serious question arises

whether the will of Evans Roberts operated upon this share which accrued after his death. Upon this interesting question the learned counsel for Ethel Roberts submitted a careful brief. Among the cases cited was Ashford v. Cafe, 7 Simons, 641, which, however, is queried by Farwell on Powers (2nd ed.), 148, and it would appear from Sugden on Powers (8th ed.), 264, that this case was decided upon the simple ground that the donee of the power was vested with what was tantamount to ownership. Wandesforde v. Carrick, Ir. R. 5 Eq. 486, was also relied upon, but this and other like cases merely, as it seems to me, illustrate the principle that a power to be exercised on a contingency may be well executed before the contingency happens. The point in the present case is different, for the contingent event concerns rather the *quantum* of the estate subject to the power. The recent decision of the Supreme Court in Harned's Estate, 273 Pa. 237, is perhaps nearer the present question, but there, as in Ashford v. Cafe, above cited, the donee of the power, which was merely implied, seems to have been vested with practical ownership. In Lindsley v. The First Christian Society, 37 N. J. Eq. 277, in the Court of Errors and Appeals, the testator gave to his wife the income of all his estate for her life or widowhood, and upon her death or marriage gave his daughter a life estate therein, and authorized her to dispose of all of the estate that might remain at the time of her death by her last will and testament, and, in default thereof, he gave the estate to his daughter's children, and, in default of her children, to his own right heirs and next of kin. During the life of the widow, the daughter made her will, in which she referred to the power of appointment given to her by her father, bequeathed legacies thereout, and devised and bequeathed the residue to the First Christian Church. Subsequently, her mother, the testator's widow, died, and the question was whether the property passed under the daughter's will. Van Syckel, J., said: "There is nothing in the testator's will to indicate an intention to engraft a limitation upon the power that it shall be contingent upon the survival of Mary. The gift over is made only in the event that she fails to exercise the power in her lifetime, and not upon the contingency that she shall survive her mother. The testator's intention clearly was that his daughter should have the absolute power of disposition of his estate, subject only to the provision for his wife; that she should at least so far enjoy it as to be permitted to make a testamentary disposition of it."

This case is, perhaps, not directly applicable to the present, yet it is analogous. As was argued by counsel in the present case, the daughter had an estate for life subject to her mother's life estate, although she never came into the enjoyment of her life estate because she predeceased her mother, and yet the power was held to be vested in her from the death of the donor and exercisable at any time; and so, in the present case, Mrs. Disston had a life estate, followed by a life estate of J. R. Evans Roberts, with a power of appointment in him. As he died before her, he never enjoyed the life estate, but, nevertheless, had a right to execute the power of appointment at any time, irrespective of whether he did or did not survive his sister. In re Denton, 63 Law Times (N. S.), 105, the question arose as to the operation of a power given to a life-tenant upon a share which accrued after the date of his will and some five years after his subsequent death, and North, J., held that his will passed the accrued share. This case also might be, perhaps, distinguished on the ground that by the will of the donor the donee's power extended to property to which he might be "entitled or presumptively entitled," and the power, furthermore, might be executed by deed or by will, but it would seem to be authority for the proposition that the accrued share should pass

by the will, if such is the donee's intention.　Upon this point it may be observed that the will of Evans Roberts refers, in the fourth paragraph, to the trust created by the father's will before him, by which the income of a portion should be applied to his support during his life, and recites that he had been given the power to appoint the manner in which his share of his father's estate should be distributed.　A narrow construction of this will might lead to the conclusion that Evans Roberts intended his appointment to operate upon his own; that is, his primary share of his father's estate, and on that only, inasmuch as he refers to that portion of his father's estate, the income of which was directed to be applied to his, Evans's, support during his life, and, therefore, excluded any share that might subsequently accrue. I think, however, that the donee intended his will to operate upon all of his father's estate which he had a right to appoint, and it will be noted that he directs that "the income that would have been paid to me had I lived be distributed as follows, etc."　If he had lived to survive his sister Edith, there could be no doubt that he would have been entitled to the income of one-third of her share.　And it will be further observed that if his power of appointment is general, and not restricted, in regard to his wife, as has been shown above, he, in the second paragraph of his will, devised his estate in general to his wife; so that if his appointment in trust for her is restricted to his own one-fourth of his father's estate, it would follow that his wife would, under section 11 of the Wills Act of 1917, be entitled absolutely to his share of the Edith Disston trust estate.　It could hardly be argued that the share did not pass by the fourth paragraph of the will because it was not specifically described, and was not intended to pass by the second paragraph because he thought it was disposed of by the fourth.　A similar argument In re Denton, 63 Law Times (N. S.), 105, was brushed aside by the court.　After consideration of the question, I hold that the appointment made by Evans Roberts in his will operates not merely upon that portion of his father's estate primarily devised in trust for him, but also upon that portion of the trust estate of Mrs. Disston which accrued by reason of her death without issue.

The balance of principal, composed as stated, is $930,111.12, which is awarded as follows: To the Philadelphia Trust Company, trustee for Edward Roberts, 3rd, one-third; to the Philadelphia Trust Company, trustee for Agnes P. R. Groome, one-third; to the Philadelphia Trust Company, trustee under the will of J. R. Evans Roberts, one-third; and there is awarded to the present accountant 3 per cent. commissions upon the one-fourth of the estate formerly held in trust for Edith Disston.　The balance of income is $3461.87.

The income which accrued prior to May 20, 1922, the date of the decease of Edith R. Disston, is awarded to Edward Roberts, 3rd, one-fourth; Agnes P. R. Groome, one-fourth; to the administrator of the estate of Edith R. Disston, one-fourth of the income apportioned to said date; to Ethel Tiers Roberts, executrix of the will of J. R. Evans Roberts, one-fourth of income apportioned to April 25, 1922, the date of his decease, and the remainder of said fourth to Ethel Tiers Roberts.　The income accruing after May 20, 1922, is awarded as follows: To Edward Roberts, 3rd, one-third; to Agnes P. R. Groome, one-third, and to Ethel T. Roberts, one-third.

Counsel will prepare a schedule of distribution in duplicate, which, when approved and annexed hereto, will form part hereof.

And now, Aug. 7, 1922, the account is confirmed *nisi*.

NOTE.—Exceptions filed to this adjudication were afterwards withdrawn, the case having been settled.