## Stear et al. v. Stear et al.

*Will—Devise—Life estate—Power of appointment—Words and phrases— "Control."*

1. Where testatrix devises all of her property, including real estate, to her "husband, to have full control, and at his death to descend between the children as he thinks best," and further directs that a grandchild should have a home with her husband and be the same as her own children, the husband takes a life estate, with remainder to the children and the grandchild.

2. In such case, the word "control" means management, to restrict, direct, guide, which is the language commonly used in the appointment of a trustee, and not the language that is ever used in the granting of an estate in fee.

3. A power given in a will to a life-tenant to appoint out of a certain class must be exercised within that class.

Action in ejectment. Case stated. C. P. Indiana Co., Sept. T., 1922, No. 369.

H. N. *Snyder* and *Jack & Jack,* for plaintiffs; D. B. *Taylor,* for defendants.

LANGHAM, P. J., Aug. 12, 1924.—This case comes before us for consideration upon a case stated, of which the facts presented are as follows:

"1. John C. Stear, by deed dated May 17, 1898, and recorded in Deed Book 'A,' vol. 65, page 552, conveyed to Sarah Stear, his wife, all that certain lot of ground in the village of Northpoint, Township of West Mahoning, county aforesaid, beginning at a post, corner of lot of Mary Conley and side of public road, on the north side of Big Mahoning Creek; thence north 12° east 5 perches to a post; thence south 74° east 10 perches to a post; thence south 12° west 5 perches to the place of beginning, containing 50 perches, strict measure, upon which there is erected a store-room and dwelling.

"2. Josiah Neal, trustee, by deed dated Dec. 30, 1899, and recorded in Deed Book 'A,' vol. 70, page 344, conveyed to the said Sarah Stear all that certain tract of land, situate in said Township of West Mahoning, bounded and described as follows: Beginning at a post on A. & W. Railroad; thence north 78° 10' east 254 feet 5 inches; thence along line of said railroad north 78° 10' east 202 feet 7 inches; thence along curve 2° 45' 754 feet to post; thence north 53° 35' east 370 feet to post; thence south 21° west 643 feet 3 inches to post in Perrysville Road; thence south 40° 30' west 244 feet 3 inches to W. O. root; thence south 33° 35' west 272 feet to post; thence south 81° west 450 feet to a post; thence north 74° 30' west 400 feet, 6 inches to a post; thence north 64° west 108 feet to an elm; north 55° west 96 feet 3 inches to a post; north 14° — 136 feet 5 inches to a post; thence north 76° west 78 feet 2 inches to a post; thence south 14° west 16½ feet to a post; thence north 76° west 173 feet 8 inches to a post in line of S. C. Welchonse; thence north —° — 460 feet 8 inches to the place of beginning, containing 20 acres and 60 perches, more or less, with allowance for road 155.57 perches. This tract of land came to Sarah Stear on account of her share of the estate of her father, James McHenry.

Stear et al. *v.* Stear et al.

"3. The said Sarah Stear died on Sept. 29, 1901, having first made her last will and testament, which was duly probated Jan. 20, 1902, and remains of record in the Register's Office of Indiana County, in Will Book 10, page 24, of which the following is a copy:

"'September 16, 1901.

"'In case of my death I will all my property to my husband to have full control, and at his death to descend between the children as he thinks best, and Violet to have a home with him and to be the same as my own children and my gold watch and organ to be hers.                    SARAH STEAR.'

"4. That the said John C. Stear was the husband of the said Sarah Stear, and after her death held and occupied all the real estate mentioned and described in the foregoing paragraphs to the date of his death.

"5. The said John C. Stear died May 9, 1922, having first made his last will and testament, dated Nov. 17, 1921, which was duly probated May 31, 1922, and remains of record in the Register's Office of Indiana County, in Will Book 19, page 353, of which the following is a copy:

"'To my beloved wife, Ella Stear, I give and bequeath all my personal estate absolutely.

"'I do hereby devise my real estate in West Mahoning Township, consisting of twenty-five acres and improvements, to my beloved wife, Ella Stear, and our daughter Zoe Stear during the natural life of my wife, to be used by them as a home.  Should my wife not want to make her home on said property, then I do direct that the same shall be sold and the proceeds divided as follows:

"'$500 to my daughter Zoe Stear and the balance to be divided between my daughter Annie (wife of John Lamison of Kittanning, Pa.), my son Monroe Stear and my daughter Zoe Stear.

"'I hereby authorize my executrix to make sale of said property and to execute and deliver a deed or deeds therefor, as I could if living, and of this my last will, I do appoint my wife, Ella Stear, Executrix.

"'Should my real estate not be disposed of during the life of my wife, then I direct that the same shall be sold after her death and the proceeds divided among my three children as hereinbefore directed.

"'The rest and residue of my estate, I do give, devise and bequeath to my beloved wife Ella Stear.

"'Witness my hand and seal this 17th day of November, 1921.

JOHN C. STEAR.   (Seal).'

"6. That Monroe Stear and Mrs. Annie Lamison, plaintiffs in the above action of ejectment, are children of the said Sarah Stear and John C. Stear, and Mrs. Violet McAfoos is grandchild of said decedent and daughter of said Monroe Stear.

"7. That the said Mrs. Ella Stear, defendant, is wife of said John C. Stear, who survived him, and Zoe Stear is daughter of the said John C. Stear and Ella Stear."

It is stipulated in paragraphs 8, 9 and 10 that "If the court be of opinion that, under the last will and testament of the said Sarah Stear, there vested in the said John C. Stear an absolute estate in fee simple, then judgment to be entered in favor of the defendants and against the plaintiffs for the land described in paragraphs 1 and 2, subject to the will of John C. Stear; but if the court be of opinion that John C. Stear took only a life estate under said will, then judgment to be entered in favor of the plaintiffs for the land described in paragraphs 1 and 2."

The value of the real estate described in paragraphs 1 and 2 is in excess of $2500.

"The costs to follow the judgment, and the parties plaintiff and the parties defendant reserve the right to sue out a writ of error therein."

It will be observed that it is agreed in the case stated that the plaintiffs, Monroe Stear and Mrs. Annie Lamison, are the children of Sarah Stear, testatrix of the will in controversy, and John C. Stear; and that the other plaintiff, Mrs. Violet McAfoos, is a grandchild of the said Sarah Stear and John C. Stear, being the daughter of Monroe Stear aforementioned.

It is further agreed that Mrs. Ella Stear, one of the defendants, is the surviving wife (by a second marriage) of John C. Stear; and Miss Zoe Stear, the other defendant, is a daughter of John C. Stear and his surviving wife, Ella.

It is not disputed that the lands in question, at the time of the making of the will of Sarah Stear and at her death, belonged to Sarah Stear in fee simple.

And it is further also agreed that the said John C. Stear was the husband of the said Sarah Stear, and, after her death, held and occupied all of the real estate mentioned and described in paragraphs "1" and "2," the lands in controversy, until the date of his death.

John C. Stear, prior to his death, which occurred May 9, 1922, made a will, as set forth in paragraph "5" of case stated.

It will thus be seen that John C. Stear treated the will of his former wife, Sarah, as a devise to him in fee.

Now, how is this? The will of Sarah Stear, quoted in its entirety, is found in paragraph "3" of the case herein stated.

A careful, studious reading of this will convinces us that the paramount and only thought in the mind of this testatrix, Sarah Stear, was for her husband to use and enjoy all her property during his lifetime, and then that it should "descend between the children," that is, her children and his, including this grandchild, Violet, to be apportioned "as he thinks best." She evidently wanted Violet to share the same as her own children. She *enjoined* her husband to give this grandchild "a home with him and to be the same as my own children."

"At his death to descend between the children as he thinks best," it seems to us, only marks the time when the gift should take effect in possession. To give an estate to take care of a second wife and subsequent children was not in her mind.

"To have full control," as her will states, does not mean ownership in the sense of an absolute estate. "Control" means management, to restrict, direct, guide, which is the language commonly used in the appointment of a trustee, and not the language that is ever used in the granting of an estate in fee.

We are of the opinion that John C. Stear took only a life estate under the will of his former wife, Sarah Stear, and that the plaintiffs are entitled to judgment in their favor and against the defendants for the land described in paragraphs 1 and 2 of the case stated.

The devise over to the children shows conclusively that the husband took only a life estate and that it was the intent of the testatrix to give him no greater estate. It seems clear that the primary intent of the testatrix was to confine the ultimate devolution of her estate to *her* children, including her granddaughter, Violet. The direction of the testatrix to the husband to apportion as "he thinks best," we think, is insufficient to enlarge his life estate to a fee.

Stear et al. *v.* Stear et al.

In arriving at this conclusion, due consideration has been given the will in its entirety, and we think we are supported by the following cases and the authorities therein cited: Chambers *v.* Union Trust Co., 235 Pa. 610; Elliott *v.* Diamond Coal Co., 230 Pa. 423; Vaughan's Estate, 230 Pa. 554; Crawford *v.* Forest Oil Co., 208 Pa. 5; Hague *v.* Hague, 161 Pa. 643.

The language of the devises in the cases just cited look infinitely stronger toward establishing a fee than in the case at bar. Here, the testatrix merely says, "I will all my property to my husband to have full *control,* and at his death to descend between the children as he thinks best, and Violet to have a home with him to be the same *as my own children.*" By what legerdemain of reasoning can we arrive at any other intent than that the husband was given a life estate, and by the word "control" was given the management in the sense of a trustee? "Violet to have a home with him and to be the same as my own children," we think, was meant to share in the fee as her own children after the death of her husband.

The power given in a will to the life-tenant to appoint out of a certain class must be exercised within that class: Lewis's Estate, 269 Pa. 379; McClellan's Estate, 221 Pa. 261.

In accordance with the stipulation contained in paragraph "10" of the case stated, "the costs to follow the judgment," an order will be made for the costs in this proceeding, to be paid by the defendants.

### Decree.

And now, Aug. 12, 1924, this case came on to be heard by argument of counsel, and, upon due consideration, it is ordered, adjudged and decreed that John C. Stear took only a life estate under the last will and testament of Sarah Stear, deceased, and judgment is hereby directed to be entered in favor of the plaintiffs for the lands described in paragraphs "1" and "2" of the case stated. It is further ordered and directed that the defendants pay the costs of this proceeding.