KLEIN, Adm. J.,
— The reason for filing the present account is the death on March 20, 1968, of Heli de Talleyrand, life income beneficiary. Manuel Gonzalez de Andia is stated to have been appointed executor of his estate.
The statement of proposed distribution recites that the settlor was not a resident of the Commonwealth of Pennsylvania, hence no Pennsylvania inheritance tax was claimed or is payable.
All parties in interest are stated to have received notice of this audit.
By decree of this court dated March 3, 1970, Henry B. FitzPatrick, Jr., Esq., was appointed guardian ad *597 litem for minors and trustee ad litem for all unborn and unascertained interests. Mr. FitzPatrick filed a written report in which he discussed at length the question requiring adjudication by this court insofar as it affects the interests he represents.
John J. Emery died, testate, on September 5, 1908, leaving to survive him his widow, Lela A. Emery (later Anson), who elected to take against his will. On January 16, 1909, she executed a trust indenture in which she conveyed the assets she received from her husband’s estate to trustees. In this deed she recited that she was creating the trust, which was irrevocable, in order that she might receive the income during her life and after her death “for the enjoyment of the children of herself and of her husband, the said John J. Emery, now deceased, and of their descendants, subject to such provisions, in trust or otherwise, as she may hereinafter impose and so that the corpus of her said right, title and interest may pass upon her decease undiminished by her, subject to such provisions, restrictions and limitations, to his blood, either directly or by virtue of the powers she may confer.”
She reserved to herself a power to appoint the principal by her last will and testament amongst her children then living and descendants of children then dead but should she fail to appoint then upon her death, the principal should be divided into as many shares as at that time there should be children of her and her late husband, John J. Emery, then living, and children of theirs dead represented by descendants then living. She directed that the shares of the daughters be held in trust to pay the income to such daughter for life, and at the death of such daughter “to pay over and distribute in kind or otherwise the principal and all accumulations of said share as she may by her Will direct, only, however, to the blood of *598 the said John J. Emery, the late husband of Grantor, save that said daughter may appoint a life estate in whole or in part in said share to any husband she may leave surviving her who should have been born at a date antecedent to the execution of this Indenture, and to whom said daughter shall have been married ...”
On March 4, 1938, the settlor executed a “Deed of Extinguishment” in which she expressly surrendered the power of appointment which she retained under the provisions of the trust deed.
Lela A. Emery subsequently remarried to Alfred Anson and died July 14, 1953, leaving a will dated March 4, 1938, which is the same day she executed the “Deed of Extinguishment,” in which she expressly stated that she had surrendered her power of appointment under the 1909 deed, and that nothing in her will should operate as an exercise of that power. She was survived by two sons, Thomas Emery and John J. Emery, whose shares have passed out of the trust, and by three daughters, Lela Emery de Talleyrand, Alexandra Moore McKay and Audrey Emery.
Lela Emery de Talleyrand died December 29, 1962. By her will she appointed the entire net income from her trust to her husband, Heli de Talleyrand, for life, and subject to her husband’s interest, appointed the principal in further trust for the benefit of her two daughters, Sheila M. Vigano and Loma M. St. Aubyn, and their issue. Under the appointment, she created a separate trust for each daughter. Each daughter is to receive the net income from her trust during her lifetime. If either daughter should die before the date fixed for vesting of the principal, the net income is to be paid to her issue living from time to time until such vesting date. At the expiration of 21 years, less one day, after Lela’s two brothers and two sisters (who *599 were the settlor’s surviving children and were lives-in-being at the date the deed was executed), the principal of each daughter’s trust is to vest in her then living children. At each daughter’s death, or at the vesting date if the daughter should die before then, the principal is to be distributed to those in whom it vested. If either daughter should have no issue living at the vesting date, at her death her trust is to accrue to her sister’s trust and in case neither daughter should have any issue at the vesting date, then upon the survivor’s death the entire is to be distributed to the descendants then living of John J. Emery.
Heli de Talleyrand, Lela’s husband, died on March 20, 1968. Accordingly, if Lela’s appointment in further trust for her two daughters is valid and effective, the entire fund will continue to remain in trust. If the appointment is not effective) the entire principal would now pass to Sheila M. Vigano and Lorna M. St. Aubyn, subject to certain assignments made by them to Addison Lanier and Girard Trust Company (now Girard Trust Bank) as trustees.
Girard Trust Bank, in its capacity as the accounting trustee, has taken the position that the appointment in further trust is valid. The bank and John J. Emery, trustees under the will of Lela Emery de Talleyrand in the exercise of her power of appointment, concur in this view, as does Henry B. FitzPatrick, Jr., the guardian and trustee ad litem.
Per contra, counsel for Lorna M. St. Aubyn vigorously contend that her mother, Lela Emery de Talleyrand, improperly exercised the power of appointment given to her under the deed of Lela Emery An-son. They maintain that her power was limited to making outright gifts to the persons who are of “the blood” of John J. Emery and that she had no right to pass the property in trust. They request the court to *600 award the principal of the trust together with accrued income outright in equal shares to her and her sister, Sheila M. Vigano.
Since Lela A. Emery (Anson) did not exercise the power she originally reserved for herself in the trust instrument, we must look to the powers she conferred upon her daughters therein to seek the answer to the question which has been submitted to us for decision.
Whether Lela Emery de Talleyrand, the donee of the power, had the right to appoint to trustees for one or more members of the class or whether she must appoint directly to the members of the class depends upon her mother’s intention, to be ascertained from a study of the four corners of the trust deed of 1909. See Burleigh Estate, 405 Pa. 373 (1961).
Scott on Trusts, vol. 1, 3rd ed. § 17.2, p. 180, says:
. . There is a tendency to construe with increasing liberality the language of the instrument in which the power is conferred, and to hold that the donee of the power has broad discretion as to the manner in which he shall exercise it in favor of the members of the class, unless it appears that the donor intended to restrict him. Thus, in the Restatement of Property §358, it is stated that “If, but only if, the donor does not manifest a contrary intent, the donee of a special power can effectively (a) appoint at one time or make several partial appointments at different times where the power is exercisable inter vivos; (b) appoint present or future interests or both; (c) make appointments with conditions and charges; (d) make appointments with restraints on alienation upon the appointed interests; (e) appoint interests to trustees for the benefit of objects.” (Italics supplied.)
This same principle is enunciated in Restatement, Trusts 2d, § 17, comment on clause (d):
“Special power of appointment. If a person has a *601 special power of appointment, that is a power to appoint among the members of a specified class of persons, he can effectively appoint interests to trustees for the benefit of objects of the power, unless the donor manifested a contrary intent. See Restatement of Property, §358. It is to be inferred that the donor of a special power intends the donee to have the same breadth of discretion in making an appointment that he has in the disposition of his own property, so far as the extent and nature of the interests which he might give to members of the class are concerned. If, however, the donor of the power manifests an intention that the donee should appoint only by directing the distribution of the property outright to or among the objects of the power, the donee cannot effectively make an appointment to trustees for the objects of the power.” (Italics supplied.)
The rule of the restatement is the same as the rule adopted in Pennsylvania.
In Lawrence’s Estate, 136 Pa. 354 (1890), the court said, at page 367:
“Nor do we think the appointment is invalid, because in the exercise of the power the donee, without special direction of John Lawrence, the testator, to that effect, in appointing the fee declared certain uses and trusts for life, with remainder over. The power conferred upon Mrs. Appleton by her father’s will was ‘to grant and convey the real estate in fee,’ in such parts or shares’ as she by her last will should direct. The power is wholly unrestricted: the entire discretion is committed to the donee of the power, to grant the fee in such form and to such persons as she chose. In the exercise of that power she did appoint the fee, and we think she was authorized, observing the rule against remoteness, to declare such uses and trusts for life as would best carry out her wishes with *602 respect to the ultimate disposal of the property. No authorities have been cited to any different effect. On the contrary, appointments in trust, even under restricted powers, would seem to have been, sustained, and, as illustrations of this, we have been referred to Alexander v. Alexander, 2 Ves. Sr. 642; Trollope v. Linton, 1 Sim. & S. 477; Crompe v. Barrow, 4 Ves. 681; Willis v. Kymer, 7 Ch. Div. 181; 2 Sugden on Powers, 273, 274.” (Italics supplied.)
The leading case on the subject in this State is Lewis’s Estate, 269 Pa. 379 (1921), which appears to be controlling. In that case, testator bequeathed, through trustees, to his daughter, Mary D. Conner, a life estate in certain income, with a power of appointment in the daughter “to such person or persons, being my lineal descendants, as said deceased daughter may have appointed by her will, in such shares and amounts as she may choose and direct by such will.” Mary, in the exercise of the -power, created through trustees a life estate in the same income in her son, Edward, giving him like power of appointment as he might direct in his will, “and in default thereof to such child or children as he may leave surviving him.” Edward Conner, the son, appealed from a ruling by this court that his mother’s exercise of the power was proper. Mr. Justice (later Chief Justice) Kephart, speaking for a unanimous Supreme Court, affirmed the ruling of this court. Mr. Justice Kephart said, inter alia, at pages 382 and 383:
“. . . The primary intent of testator was to confine the ultimate devolution of his estate to lineal descendants.’ The person or persons, shares (estates) and amounts, were left to the daughter’s discretion, so long as the benefits were confined within the selected class. It was not a devise to lineal descendants generally, but to such of them, and in such estates, as the *603 daughter might limit and determine . . . The fact that a use and trust was imposed on the corpus during the life estate of Edward would not defeat the appointment, though the power was restricted within a class. It was restricted to a class only; but, operating within the class, it was not only general but absolute. Therefore, a use and trust, so imposed, being within the limits of the authority and in the exercise of an absolute right within the class, was not in violation of the original founder’s intention, and is moreover sustained by McClellan’s Est., 221 Pa. 261.”
It, therefore, seems manifest that the rule in this State is that the donee of a special power of appointment possesses the unlimited right to appoint to members of the permitted class of beneficiaries, either outright or in trust, unless the donor manifested a contrary intent in the instrument creating the power.
This is in conformity with the general rule of law that a power to appoint the fee usually authorizes the appointment of any lesser interest, or any legal limitations within the scope of the power, which may be carved out of the fee. The absence of express permission to give the estate in trust does not exclude the authority to do so. As the court said in Bailey’s Estate, 287 Pa. 478, 482 (1926), . . authority to divide an estate by will between and among ‘our joint issue’ in such manner and in such proportions as the widow may think proper and advisable, restricts her designation to a class (joint issue), but that within the class the zuidozu’s zuill is supreme.” (Italics supplied.)
Loma M. St. Aubyn makes much of the fact that settlor directed the trustees “to pay over and distribute in kind or otherwise the principal and all accumulations of said share as [the donee] may by her will direct, only however, to the blood of the said John J. *604 Emery . . She contends that the use of this language prevented her mother from making a gift in trust. We think this argument is wholly without merit. The phrase “pay over and distribute” is a stock expression often used by scriveners at the time the trust instrument under consideration was prepared. In our opinion, it can have no material effect in ascertaining the settlor’s intention with respect to the problem we are discussing under the circumstances of this case.
Counsel has not furnished the court, nor has our research disclosed any appellate court decision in this state subsequent to Lewis’s Estate, supra, which seriously challenges the principles enunciated therein by Chief Justice Kephart.
Accordingly, we rule that Lela Emery de Talleyrand, settlor’s daughter, had the right to appoint the share of the estate over which she possessed a power of appointment in trust for her daughters and their descendants as she did and was not restricted to making outright gifts to her daughters.
The fund presently accounted for was awarded to the accountant by adjudication of Bolger, J., dated April 21,1955.
Waivers of income accounting have been submitted and are annexed. . . .
And now, July 16, 1971, the account is confirmed nisi.